UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
FIKRET KORAC,

                Petitioner,

   -v-

UNITED STATES OF AMERICA,

                Respondent.
-------------------------------------------------------------------x

**MEMORANDUM DECISON AND ORDER**

No. 93-cr-848 (CS)

Appearances:

Fikret Korac
Batavia, New York
Pro Se *Petitioner*[1]

Rebecca Mermelstein
Assistant United States Attorney
White Plains, New York
*Counsel for the United States of America*

Seibel, J.

    *Pro se* petitioner Fikret Korac immigrated to the United States in 1972 and became a permanent resident alien in 1974. He was convicted of federal felonies in 1994 and again in 2007. As a result of his convictions, Korac was ordered to be removed from the United States and faces deportation to Montenegro. In an attempt to avoid deportation, Korac has petitioned this Court for a writ of error *coram nobis* to vacate his 1994 conviction on the grounds that he was not apprised of the potential immigration consequences of entering a guilty plea. (Doc. 107.) For the reasons stated herein, Korac's motion is DENIED.

---

[1] On February 4, 2011, Geoffrey Stewart, Esq. requested permission, which was granted, to enter an appearance on Korac's behalf and to file a reply. (Doc. 114.) No reply however, was ever filed.

I.   **BACKGROUND**

Petitioner Korac, a native of Yugoslavia, was admitted to the United States at New York City on December 19, 1972, and became a permanent resident alien in 1974. (Opp'n Mem. Ex. 4 ¶¶ 100, 105).[2] Between September 1991 and April 1992, Korac and several co-defendants stole approximately $298,000 by using credit cards stolen from the locker rooms of gyms and athletic clubs to obtain cash advances. (*Id.* at 2, Ex. 1 ¶¶ 5–15, 23.) Specifically, Korac and his co-defendants paid clerks at the Yonkers Raceway to approve the cash advances, which were then distributed among the co-defendants. (*Id.* Ex. 12 at 15:3–17.) For his part in the enterprise, Korac personally received approximately $15,000 to $20,000. (*Id.* Ex. 12 at 15:18–20.) On October 12, 1993, Korac and his co-defendants were indicted on one count of conspiracy to commit access device fraud in violation of 18 U.S.C. §§ 371 and 1029. (Doc. 32.) Thereafter, on June 28, 1994, Korac pleaded guilty to the sole count of the indictment, (Opp'n Mem. Ex. 1 ¶ 2), and on September 16, 1994, he was sentenced to one year and one day of imprisonment, to be followed by three years of supervised release, (Doc. 75). I will refer to this case, No. 93-cr-848, as the "1994 Conviction."

From November 2000 to January 2002, Korac participated in a conspiracy to install devices known as "skimmers" in automated teller machines ("ATMs") in New York, California, and Florida. (Opp'n Mem. Ex. 4 ¶¶ 28–47.) The skimmers allowed members of the conspiracy to steal users' bank account information from the ATMs in which the skimmers were installed. (*Id*. Ex. 4 ¶ 32.) Using the stolen account information, members of the conspiracy fraudulently withdrew more than $3,750,000 from victims' bank accounts. (*Id.* Ex. 4 ¶ 34.) On December 4,

---

[2]   "Opp'n Mem." refers to the Memorandum of Law of the United States of America in Opposition to Petition for Writ of Error Coram Nobis. (Doc. 111.)

2001, Korac was indicted, (No. 01-cr-1127, Doc. 7), and on April 11, 2002, that indictment was superseded, (No. 01-cr-1127, Doc. 19).  On May 7, 2003, the indictment was again superseded, (No. 01-cr-1127, Doc. 66), and on June 6, 2003, Korac pleaded guilty to conspiracy to commit bank and access device fraud, bank fraud, access device fraud, and assault on a federal officer, in violation of 18 U.S.C. §§ 371, 1344, 1029(a)(5), and 111(a)(1).  (Opp'n Mem. Ex. 6.)  On June 27, 2007, Korac was sentenced to time already served and a five-year period of supervised release.  (No. 01-cr-1127, Doc. 82.)  I will refer to this case, No. 01-cr-1127, as the "2007 Conviction."

On March 26, 2010, Korac was served with a Notice to Appear ("NTA") that informed him that he was subject to deportation on the basis of having been convicted of an aggravated felony—specifically his 2007 Conviction.  (Opp'n Mem. Ex. 8.)  That charge was supplemented on May 10, 2010 to include Korac's 1994 Conviction as an additional basis for deportability.[3] (*Id.* Ex. 10 at 2.)  On August 19, 2010, Korac was ordered to be removed from the United States because his 1994 Conviction and his 2007 Conviction each constituted convictions for aggravated felony offenses in violation of 8 U.S.C. § 1227(a)(2)(A)(iii), and because—as a result of both convictions—Korac had been convicted of more than one crime involving moral turpitude not arising from the same criminal conduct in violation of 8 U.S.C. § 1227(a)(2)(A)(ii).

---

[3] The final version of the charge issued by the Department of Homeland Security alleged that Korac was deportable for violations of Section 237(a)(2)(A)(ii) and 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(ii)–(iii).  The former makes deportable any alien who has been convicted of two or more crimes involving moral turpitude not arising out of a single scheme or criminal conduct.  The latter makes deportable any alien who has been convicted of an aggravated felony.  Section 101(a)(43)(M) of the INA, 8 U.S.C. § 1101(a)(43)(M), defines crimes involving fraud or deceit in which loss to the victim exceeds $10,000 as an aggravated felony, and Section 101(a)(43)(U), 8 U.S.C. § 1101(a)(43)(U), in relevant part defines a conspiracy to commit fraud or deceit which results in losses to the victim that exceed $10,000 as an aggravated felony.

(*Id.* Ex. 10 at 8–9.)  On August 31, 2010, Korac filed a Notice of Appeal from the decision ordering his removal.  (*Id.* Ex. 11.)

On October 18, 2010, Korac applied to this Court for a writ of error *coram nobis* pursuant to 28 U.S.C. § 1651(a) seeking to have his 1993 guilty plea and 1994 Conviction vacated.  (Doc. 107.)  If granted, the writ would remove the 1994 Conviction as one of the bases upon which Korac was ordered to be deported.  Korac appears to advance two reasons why his 1994 Conviction should be vacated.

First, Korac argues that the guilty plea on which his 1994 Conviction rests was invalid because the Court did not advise him that pleading guilty might negatively impact his immigration status.  (Pet'r's Mem. ¶¶ 5–6.)[4]  The transcript of the plea allocution does not contain any mention of the possible immigration consequences associated with a guilty plea.  (Doc. 110.)  Second, Korac argues that his plea is invalid because he was denied effective assistance of counsel in violation of the Sixth Amendment, (Pet'r's Mem. ¶¶ 14, 18, 25), in that his attorney failed to inform him that pleading guilty might have a negative affect on his immigration status, (*id.* ¶ 6).  Korac states that he told Frank A. Bress, the attorney representing him at the time of his plea, that he was not a citizen of the United States, but that Bress "talked absolutely nothing concerning immigration consequences resulting from his guilty plea or conviction," (*id.*), and that had he understood the potential immigration consequences of the 1994 Conviction, he would have "insisted" on going to trial, (*id.* ¶ 8).  In an affidavit filed in connection with this proceeding, Bress has stated that although he is unable to recall any specific conversation he may have had with Korac regarding the immigration consequences of his plea, it

---

[4]     "Pet'r's Mem." refers to Defendant-Petitioner's Motion for Post Conviction Relief Pursuant to Writ of Error Coram Nobis Petition Section 28 U.S.C. 1651(A).  (Doc. 107.)

was at the time his standard professional practice to discuss the immigration consequences of criminal convictions with his clients and he believes he would have discussed such consequences with Korac before Korac pleaded guilty. (Opp'n Mem. Ex. 3 ¶ 6.)

Whether or not he was aware of them in 1993, Korac was aware of the potential immigration consequences of pleading guilty to a felony at least as early as May 2003, when he entered the guilty plea which formed the basis for the 2007 Conviction. (Opp'n Mem. Ex. 6 at 4:10–23.) During that plea allocution, the Court specifically asked if Korac understood that pleading guilty to a felony might affect his immigration status; he replied that he did. (*Id.*) Furthermore, a letter from Korac's attorney to the United States Attorney's Office dated August 4, 2003 states that Korac believed he was facing possible deportation. (*Id.* Ex. 7.)

## II.   DISCUSSION

### A.   *Coram Nobis* Standard

Courts have the authority, pursuant to the All Writs Act, 28 U.S.C. § 1651(a), to grant the ancient common-law writ of *coram nobis* in order to "redress an adverse consequence resulting from an illegally imposed criminal conviction or sentence." *United States v. LaPlante*, 57 F.3d 252, 253 (2d Cir. 1995) (citing *United States v. Morgan*, 346 U.S. 502, 512–13 (1954)). The writ has been abolished and replaced in the civil context by Federal Rule of Civil Procedure 60(b), but it may still be granted as a remedy of last resort in the criminal context, *id.*, particularly where a petitioner who has served his sentence, or is no longer in custody, is accordingly unable to pursue direct review of a conviction, or collateral relief by means of a *habeus corpus* petition, *Fleming v. United States*, 146 F.3d 88, 89–90 (2d Cir. 1998). But despite its applicability in the criminal context, *coram nobis* is "not a substitute for appeal, and . . . is strictly limited to those cases in which errors . . . of the most fundamental character

have rendered the proceeding itself irregular and invalid." *Foont v. United States*, 93 F.3d 76, 78 (2d Cir. 1996) (second alteration in original) (internal quotation marks omitted). The remedy should be granted only where "extraordinary circumstances are present." *Id.* (internal quotation marks omitted).

To meet this high standard, a petitioner must demonstrate that: (1) there are circumstances compelling such action to achieve justice; (2) sound reasons exist for failure to seek earlier appropriate relief; and (3) the petitioner continues to suffer legal consequences stemming from the conviction that may be remedied by granting of the writ. *Id.* at 79. Moreover, the burden to prove the existence of errors in the challenged proceedings rests with the petitioner, and the Court presumes that the proceedings were correct until the petitioner shows otherwise. *Nicks v. United States*, 955 F.2d 161, 167 (2d Cir. 1992). Korac cannot meet this high standard because there are no continuing legal consequences that would be remedied were his 1994 Conviction vacated, and because he can show no sound reasons for failing to seek relief in 2003 when he learned that a conviction for fraud carried potential immigration consequences.

    **B.**    **No Continuing Legal Consequences that May Be Remedied by Granting the Writ**

Korac cannot demonstrate that he continues to suffer legal consequences from his 1994 Conviction that would be remedied were this Court to grant his *coram nobis* petition. The prospect of deportation certainly constitutes the type of ongoing legal consequence that could be remedied by a writ of *coram nobis*. *See Lee v. United States*, No. 05-5844, 2007 WL 1987868, at *5 (S.D.N.Y. July 9, 2007) (report and recommendation) (consequence of deportation "clearly" establishes third requirement for *coram nobis* relief); *see also Chhabra v. United*

*States*, No. 09-1028, 2010 WL 4455822, at *3 (S.D.N.Y. Nov. 3, 2010) (petitioner determined to be deportable on the basis of a prior conviction continues to suffer legal consequences from that conviction).  If Korac faced deportation only on the basis of his 1994 Conviction, the third requirement for *coram nobis* relief would be met.  But this is not that case.

Where a separate conviction forms an independent basis for deportation, the extraordinary relief of *coram nobis* is inappropriate because vacating the challenged conviction would not prevent the deportation, and is therefore not required to achieve justice.  *See Foreman v. United States*, 247 F. App'x 246, 248 (2d Cir. 2007) (affirming denial of *coram nobis* relief where, among other things, issuance of writ would not remedy consequence of deportation because petitioner had been convicted of separate aggravated felony that formed independent basis for removal); *Shushansky v. United States*, No. 93-5632, 1995 WL 108668, at *2 (E.D.N.Y. Mar. 1, 1995) (denying *coram nobis* relief where, among other things, petitioner's independent conviction made him deportable regardless of challenged conviction).

Here, Korac was found to be deportable and ordered to be removed from the United States on the basis of his 1994 Conviction *or* his 2007 Conviction.  (Opp'n Mem. Ex. 10 at 7 ("[R]espondent's convictions on July 3, 2007, clearly and beyond doubt show the loss to the victim or victims in excess of $10,000 and that the respondent's convictions would make him removable for having been convicted of an aggravated felony . . . .").)  Because the 2007 Conviction constitutes an aggravated felony, it forms an independent basis for deportation pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii).  As a result, the legal consequence that Korac seeks to avoid—deportation from the United States—will not abate if his 1994 Conviction is vacated.  Korac thus cannot demonstrate that he continues to suffer legal consequences stemming from his

1994 Conviction *that would be remedied* were this Court to grant his *coram nobis* petition. Accordingly, his petition is denied.

### C. No Sound Reasons for Delay

Furthermore, Korac can offer no sound reasons for waiting until 2010 to seek relief from his 1994 Conviction. A *coram nobis* petition is not subject to a statute of limitations, but relief available under the writ may be barred by the passage of time if the petitioner is unable to offer "sound reasons" for a failure to seek earlier relief. *Foont*, 93 F.3d at 79 (internal quotation marks omitted). Where a petitioner's filing is delayed because the start of deportation proceedings provides the first indication that an earlier conviction has rendered the petitioner subject to removal, a sound reason for the delay exists. *See Park v. United States*, 222 F. App'x 82, 83 (2d Cir. 2007). But where a petitioner has learned that a conviction carries possible immigration consequences and nevertheless waits to seek *coram nobis* relief for a period of several years, or until he has exhausted other means of attacking the conviction, no sound reason exists. *See Mastrogiacomo v. United States*, No. 90-565, 2001 WL 799741, at *2 (S.D.N.Y. July 16, 2001) (petition for writ of *coram nobis* barred because, among other things, petitioner waited three years to file for relief after learning he was removable); *see also Hyun Ahn v. United States*, 96 F. App'x 43, 44 (2d Cir. 2004) (strategy of challenging deportation through immigration proceedings was not sound reason for four-year delay in filing petition for writ of *coram nobis*).

Korac waited almost seventeen years to challenge his 1994 Conviction. It is at least arguably the case that Korac did not know with certainty that the Department of Homeland Security intended to deport him on the basis of 1994 Conviction until he received the Government's Additional Charges of Inadmissibility/Deportability dated May 10, 2010. He nevertheless knew or should have known as early as 2003 that pleading guilty to fraud charges

8

carried the possibility of immigration consequences because he was informed of those possible consequences when he pleaded guilty in 2003 to charges similar to the charge underlying the 1994 Conviction. Accordingly, there is no "sound reason" for Korac's delay in filing this petition, and that delay provides a second basis for denying the petition.

In light of the above disposition, I need not address either: (1) the legal question of whether *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010)—which held that effective assistance requires counsel to discuss with the defendant the possible immigration consequences of a plea of guilty—applies retroactively to cases on collateral review, *see Mudahinyuka v. United States*, No. 10-5812, 2011 WL 528804, at *3 (N.D. Ill. Feb. 7, 2011) (collecting diverging cases); or (2) the factual questions of whether Korac was or was not advised of those consequences before the 1994 Conviction and if not, whether he would have gone to trial had he been so informed.

### III. CONCLUSION

For the reasons stated above, Petitioner Korac's petition for a writ of error *coram nobis* is DENIED. The Clerk of the Court is respectfully directed to terminate the pending petition. (Doc. 107.)

**SO ORDERED.**

Dated: June 3, 2011
       White Plains, New York

                                            CATHY SEIBEL, U.S.D.J.